## RECORDER'S COURT—CITY OF COHOES,

### Oct. 2, 1914.

## CHARLES VAN BRAMER et al. v. JOHN WALLACE

CONTEMPT—WITNESS—REFUSAL TO APPEAR BEFORE INVESTIGATING COM-
MISSION, LAWS 1892, CHAP. 671–1909, CH. 26.

Ţhe Common Council of Cohoes authorized the Mayor to investi-
gate certain charges in the daily press—Defendant failed to ap-
pear as a witness in response to a summons and a warrant of
attachment was issued.   *Held*, the resolution authorizing the
Mayor to appoint the Committee not having been approved by the
Mayor in the manner prescribed by the Charter by indorsement of
approval or veto upon a transcript thereof and three days not
having elapsed after its passage, before the application for the
summons requiring defendant to appear it was void and there was
no obligation upon defendant to obey it.

APPEARANCES.

*Edward A. Mealy, City Attorney*, for plaintiff.

*Walter H. Wertime* and *David Ashworth*, for defendant.

BY THE COURT:

This is a proceeding to punish the defendant for an alleged
Contempt in refusing to obey a summons issued out of this Court
to attend and testify before a Committee appointed by the
Mayor pursuant to a resolution of the Common Council of the
City of Cohoes to investigate certain charges made in the Even-
ing Dispatch, a newspaper published in said City, concerning
a certain contract entered into by the Board of Fire Commis-
sioners for the purchase of apparatus and equipment, said City

having appropriated $20,000.00 for the purpose, and said newspaper charging favoritism, misappropriation, and that such contract, so entered into, was not for the best interest of the City.

By section 21, Article 29, Chapter 247 of the Laws of 1913, power was conferred upon the Common Council of Cities—" To investigate and inquire into all matters of concern to the City and its inhabitants."

By section 6, 7 and 8, of Article 2 of Chapter 26 of the Laws of 1909, a committee appointed by a Common Council of a City—" Upon any subject or matter within the jurisdiction of such Common Council," was given power to apply for a summons to any Justice of the Supreme Court, County Judge or Recorder of such City, requiring such witnesses as said Committee should desire, to appear before such body and give testimony concerning the matter before it.

It was also provided by said act, that upon the failure of any witness to obey such summons, an attachment against him could upon application be issued by such Justice or Officer and such witness brought before the Court to purge himself of the alleged contempt.

Pursuant to these provisions, the Common Council of said City passed a resolution authorizing the Mayor to appoint a Committee of three to investigate said charges, and such Committee was appointed by said Mayor, and upon the application of the Chairman of such Committee, made upon affidavit, a summons was issued and served upon the defendant commanding him to appear before such Committee.

The defendant having failed to appear, application was made to this Court, as prescribed by said act, for a warrant of Attachment and the defendant was brought before the Court to purge himself of the alleged Contempt.

Upon the hearing the defendant filed preliminary objections to the jurisdiction of this Court, among others, the objection

that, at the time said summons was applied for by said Committee and issued by the Court, there was no valid existing resolution in force appointing such Committee, and that therefore, such committee had no legal standing or right to apply for the issuing of a summons by this Court, and that any summons issued by it is, and was, void and of no effect, and the defendant was under no legal obligation to obey the same.

The provisions of Law governing the passage of resolutions by the Common Council of this City are contained in Section 2, Title 5 of Chapter 671 of the Laws of 1892, and are as follows:

"Every order, resolution and ordinance passed by the common council, except resolutions appointing to office or place and canvassing votes, of which the mayor approves, shall have his approval indorsed in writing on a transcript thereof and signed by him officially. The transcript of every such order, resolution or ordinance, of which he disapproves shall be returned by him to the common council or its clerk, with his objections in writing indorsed thereon or attached thereto, which shall be filed with the clerk; and the common council shall, at its regular meeting held next after such return, proceed to reconsider such order, resolution or ordinance; and if the same be passed by the concurring vote of two-thirds of the aldermen then in office, it shall have full force and effect."

"If any such transcript shall not be returned by the mayor to the common council or clerk within three days after it shall have been presented to him, Sunday excepted, such order, resolution or ordinance *shall be of like force and effect as if duly approved by him.*"

It is apparent from the reading of this statute, that before a resolution passed by the Common Council shall become of force and in effect that one of three things must transpire subsequent to its passage by the Common Council;—First: It must be approved by the Mayor by indorsing his approval in

writing on a transcript thereof and signed by him officially; or Second: It must be vetoed by the Mayor and then passed by the Common Council over his veto; or Third: If not returned by the Mayor to the Common Council within three days after it shall have been presented to him,—" Such resolution shall be of like force and effect as if duly approved by him."

The testimony shows that no approval by indorsement as prescribed by statute was made on a transcript of such resolution; that it was not vetoed by the Mayor, and that when the said Committee applied for and the said summons was issued by this Court, three days had not elapsed since its pasage.

The testimony also shows that upon the passage of the resolution the Mayor named the committee orally, the names of the same being written on the back of the resolution by the Clerk, and that the Mayor instructed the City Attorney to proceed in the matter. The Mayor also testified that he approved of the resolution by appointing the Committee, that was regarded by him as an approval, and that he had approved of the resolution orally only.

Under the foregoing statement of law and fact, the question for the Court to decide is—Did this Committee, at the time, it acted, have any legal status?

Dillon on Municipal Corporations, Sec. 578 lays down the rule as follows:

" In approving or disapproving of the ordinance, the Mayor must comply with the requirements of the Statute or charter.— The power of the Mayor to approve or disapprove an ordinance is entirely separate and distinct from the function with which he may be vested as presiding officer of the Common Council. The fact that the Mayor or Presiding officer heard the ordinance read, put the motion for its adoption and signed and approved of the Journal in which it was entered is not a compliance with the statutory requirement that the ordinance be approved by him or passed by a specific majority over his veto

and does not dispense with his approval in the manner prescribed by the Charter." Vol. 28, Cyclopedic of Law (Cyc) p. 355 says—" The general rules with regard to approval or veto of municipal ordinance seem to be that the ordinance after adoption by the Common Council shall be duly presented to the Mayor for his official action thereon, that if he approves, he shall plainly endorse his approval in writing over his official signature; that if he disapproves, he shall set forth in writing over his official signature the reasons for his veto, that he shall make due return to the Clerk within the period limited by law of the ordinance or resolution with his official action thereon and that no previous recommendation or suggestion of the Mayor, or any words spoken, or signature to any other records or documents can be substituted for the official approval or veto."

Again Dillon in Section 578 also says—" But where by the Charter the Mayor is part of the law making power, his concurrence in legislative action is essential to its validity. When the Charter requires the ordinance to be submitted to the Mayor for his approval or disapproval, the ordinance must either be approved by him or be passed over his veto *in the prescribed manner.*"

In a late case in Massachusetts, Farrell v. Boston, 192 Mass. Reports 15, the following principles were laid down—

" Under a Charter requirement that ordinances shall, before taking effect, be presented to the Mayor and approved by him, or if vetoed be passed again, and that upon his failure to return them in five days they shall become operative, a literal compliance with these provisions is essential."

Again, in a late case in Connecticut, that of N. Y. & N. E. R. R. v. Watake, 66 Conn. 300, it was held—

" Under a statutory provision that every ordinance shall be sent to the Mayor, who shall either approve it, in which case it shall become operative and effectual, or disapprove it, in which

case he shall return it; an affirmative act of approval by the Mayor by written declaration over his signature is essential to the validity of the ordinance, and that the fact that by custom, ordinances not disapproved have been treated as approved is not sufficient to give them validity."

See also 26 American State Reports 291.

Applying the foregoing principles of Law to the facts proved in this case, it follows that said resolution, not having been approved by the Mayor in the manner prescribed by the Charter, and three days not having elapsed after its passage, such resolution therefore had no legal force, and was inoperative and ineffectual for the purpose at the time such committee applied for, and this Court issued its summons to defendant. The resolution had not matured. It had not yet crystallized into concrete law. It was not yet in force and any process issued thereon was void.

Being void, there was no obligation upon defendant to obey it. Nichol's on Pleading and Practice, Vol. 1, p. 336 says: " It is well established that if the mandate is void, disobedience thereto is not a contempt "—" The question arises then as to what will render a mandate void, and the answer is—want of jurisdiction either of the subject matter or of the person affected thereby and nothing else. It must be shown that in point of law, there was no mandate or order, and no disobedience, by showing that the Court had no right to Judge between the parties on the subject."

An application of this principle was lately made in the case of In re Tammany, 145 N. Y. Supplement, 388, decided January 21, 1914, wherein it was decided—" A Justice of the Supreme Court had no authority to punish as for criminal Contempt a violation of an injunction order which he had no authority to grant."

In consequence of the views above expressed and the Conclu-

sion arrived at therein, it becomes unnecessary to consider the remaining preliminary objections.

The proceeding is dismissed and defendant discharged from custody.